IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02398-MEH

GWENDOLYN ANN POOLE,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

---

# ORDER
---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff, Gwendolyn Ann Poole, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and her application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83c. Jurisdiction is proper under 42 U.S.C. § 405(g). Because the ALJ failed to address all of Ms. Poole's severe impairments at step three, I reverse the decision of the ALJ and remand the case to the Commissioner for further proceedings.

## BACKGROUND

**I.    Ms. Poole's Conditions**

    Ms. Poole was born on September 20, 1966; she was forty-six years old when she filed her application for DIB and SSI. [AR 77]. Ms. Poole claims she became disabled on October 22, 2012 due to physical impairments. [*Id.*]

Ms. Poole first sought treatment for lower back pain in May 2005. [AR 307]. After lumbar epidural steroid injections and physical therapy failed to relieve her pain, she underwent back surgery on January 27, 2006. [AR 314–22, 340–42]. During the surgery, disc material impinging on Ms. Poole's nerve root was found and successfully removed. [AR 341].

On December 30, 2007, Ms. Poole was rear-ended by a drunk driver. [AR 354]. After the accident, she experienced migraines, upper and mid back pain, and tingling in her arms. [*Id.*] For three years, Ms. Poole received osteopathic manipulation, chiropractic treatment, and various prescriptions for painkillers. [AR 394]. On December 9, 2010, Ms. Poole was referred to Uptown Brain Injury and Pain Management to address her recurring symptoms. [*Id.*] There, Dr. Alexander Feldman noted reduced range of motion ("ROM") in the lumbosacral spine and cervical spine, as well as reduced size of the left calf muscles and positive leg raising tests. [AR 395]. Ms. Poole was then referred for a lumbar spine MRI at Denver Integrated Imaging North. [AR 389]. This test showed increased disc extrusions and disc bulge with compression of nerve roots in her spine. [AR 400]. Though the MRI revealed reduced spinal stenosis, a new foraminal narrowing was found. [*Id.*] In May 2011, an MRI was completed on her cervical spine, which demonstrated mild degeneration yet no accessory ligament tears. [AR 386]. She attended physical therapy for four months in 2011. [AR 402–24].

Ms. Poole began to experience symptoms of hypothyroidism in February 2012. [AR 432]. Throughout 2013 and 2014, Ms. Poole was formally diagnosed and treated at Aurora South by Dr. Michael Holder and Dr. Kalindi Batra for hypothyroidism, hypertension, obesity, sinusitis, migraines, and back pain. [AR 438–98]. Regarding her migraines and back pain, she displayed no focal neurological deficits, normal sensation, reflexes, muscle strength, and tone in

February 2013. [AR 497]. Further, in November 2013, Ms. Poole walked with a normal gait and still had normal sensations and reflexes. [AR 466]. She was prescribed Armour to treat her hypothyroidism symptoms, which included weight gain, hair loss, and fatigue. [AR 462, 564]. However, her most recent bloodwork labs have all demonstrated normal baselines of TSH/FT3/FT4 and an ultrasound showed only mild enlargement of the thyroid, which do not represent a true diagnosis of hypothyroidism. [AR 468, 564]. Also, on April 30, 2014, Ms. Poole elected to stop taking her hypertension medication. [AR 446]. Despite her high blood pressure, Dr. Batra noted that she did not have any hypertensive risk factors or target end organ damage. [*Id*.]

In July and August 2014, Ms. Poole visited two different emergency care centers with complaints of low back and left hip pain. [AR 542, 689]. Both times her doctors gave her Percocet and ordered x-rays of her left hip and lumbosacral spine. [*Id*.] Her left hip x-ray demonstrated "moderate to severe degenerative changes in the hip" but no apparent fractures or malalignment. [AR 543]. The x-ray of her lumbar spine showed mild degenerative dislocations, foraminal narrowing, and a bulging disc on her S1 nerve. [AR 546].

On August 7, 2014, Ms. Poole first visited the Hidden Lake Medical Offices to address her chronic back pain. [AR 560]. There, Dr. Emily Merrick noted Ms. Poole had full ROM, negative straight leg raising tests, and her lower extremity strength was rated a 5/5. [AR 561]. Though her left lower back and left hip were tender, the doctor opined that Ms. Poole appeared to be in no pain and she should stop taking Percocet. [*Id*.] Ms. Poole saw Dr. Janisse Rears four days later, who consulted her on chronic pain syndrome and symptom management. [AR 559]. Dr. Rears offered steroid injections for her hip pain and recommended increasing activity by five

minutes per week to promote weight loss. [AR 560]. In response, Ms. Poole declined steroid injections and stated she cannot increase the time she spends exercising. [*Id.*]

Ms. Poole had her initial visit with Dr. Karen Ksiazek at Exempla Spine Care on August 26, 2014. [AR 548]. She explained that after eventually agreeing to a left hip injection, her average pain level was a five out of ten, with tingling and numbness in her left leg and stabbing pain in her right thigh. [AR 548, 550]. She had restricted ROM in her spine and a positive right leg slump test. [AR 550]. However, her straight leg raises were negative bilaterally, she had significant compression of nerve roots, and a normal heel-toe walk. [AR 550–51]. Dr. Ksiazek recommended physical therapy, spine and hip injections, and possible orthopedic correction of her left hip. [AR 549].

Dr. Rears submitted a Colorado Department of Human Services Med-9 Form in March 2015. [AR 577]. She opined that Ms. Poole was "not totally disabled" but had a physical impairment that would last for six months. [*Id.*] She stated that Ms. Poole's chronic lower back pain limited her to light physical exertion. [*Id.*]

On March 7, 2015, Ms. Poole spent the night in an emergency room due to chest pain and a racing heart. [AR 742]. Her EKG results showed an irregular sinus rhythm, but overall she had no focal neurological deficits, normal ROM, no back pain, and full (4/4) strength. [AR 744, 758]. Her doctor noted that she was "a bit melodramatic in describing" her symptoms. [AR 758]. She was diagnosed with atrial fibrillation and discharged the next morning. [*Id.*]

After her hospitalization, Ms. Poole visited Dr. Kristin Sterrett at Hidden Lake Medical Offices. [AR 627]. Ms. Poole refused to see their endocrinologist, and Dr. Sterrett noted that she was unlikely to accept evidence-based medical care in the future. [*Id.*]

4

On April 7, 2015, Ms. Poole revisited Dr. Ksiazek for back and neck pain. [AR 734]. She described her current pain as a 4/10 but her average pain as a 5/10. [*Id.*] Dr. Ksiazek noted only mild cervical spine spasms and recommended x-rays and physical therapy. [AR 736–37]. An x-ray of her cervical spine on April 8 demonstrated mild degenerative disc disease but no fracture. [AR 679]. A left shoulder x-ray showed no fracture or dislocation and only mild osteoarthritic changes. [AR 587].

On October 16, 2015, Ms. Poole mentioned to Dr. George Robinson at Rock Creek Medical Offices that she does not take her medication for atrial fibrillation and hypothyroidism anymore, as she wishes to self-regulate. [AR 616]. For her chronic pain, she described her left hip pain as worsening; she cannot sit cross-legged and has difficulty putting on her shoes. [AR 615]. She relayed to the doctor that she receives hip injections every three months, but their effectiveness has diminished over time. [AR 616]. Further, in that same month, an x-ray of her hips showed "bone on bone," but only minimal degenerative changes. [AR 616, 650–51]. Dr. Robinson performed a total left hip replacement on February 1, 2016. [AR 600–05]. Six weeks after the surgery, on March 15, Ms. Poole reported that "a lot of her preoperative pain is improved." [AR 593]. She still experienced back issues and felt as if her legs were different lengths, so Dr. Robinson recommended continued physical therapy to strengthen her hip muscles. [AR 593–94].

Ms. Poole visited Dr. Ksiazek on February 16, 2016 to address her continued back pain. [AR 725–26]. The doctor ordered an MRI of her lumbar spine, which demonstrated shallow disc displacement, central disc protrusion, and anterior spondylosis. [AP 798–99]. After this test, on March 29, Dr. Ksiazek submitted a form regarding Ms. Poole's ability to perform work-related

5

activity. [AR 724]. She stated that Ms. Poole could sit for only one hour, stand for fifteen minutes, and could not walk more than a quarter mile with an aid. [*Id.*]

However, one month later, Dr. Ksiazek submitted to the SSA a Medical Source Statement of Ability to Do Work Related Activities. [AR 790–96]. She opined that Ms. Poole could occasionally lift up to fifty pounds, occasionally carry up to twenty pounds, and frequently carry ten pounds. [AR 790]. Further, she stated that Ms. Poole could sit for up to seven hours within a day and for forty-five minutes at a time, stand for two hours within a day and for twenty minutes at a time, and walk for three hours but only forty minutes at a time. [AR 791]. Dr. Ksiazek opined that Ms. Poole had some limitations on the use of her left foot, left arm, and shoulders, but could still occasionally climb stairs, balance, kneel and crawl. [AR 793]. Also, she recommended Ms. Poole never climb ladders and avoid the extreme cold and heat. [AR 794]. Overall, Dr. Ksiazek surmised that Ms. Poole has the ability to sort, handle paper or files, prepare meals, care for personal hygiene, go shopping, and travel without assistance. [AR 795].

## II. Procedural History

Ms. Poole asserts she first became disabled on October 22, 2012. [AR 19]. The SSA initially denied her application for DIB and SSI on November 10, 2014. [*Id.*] Ms. Poole subsequently requested a hearing before the ALJ, which took place on April 19, 2016. [*Id.*] The ALJ ruled on June 28, 2016 that Ms. Poole is not disabled. [AR 28]. According to the ALJ, although Ms. Poole has severe impairments, they do not meet the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. [AR 21–22]. Then, the ALJ held that, despite Ms. Poole's limitations, she has the residual functional capacity to perform her past relevant work as an administrative assistant. [AR 23–28].

The SSA Appeals Council subsequently denied Ms. Poole's request for review, making the SSA Commissioner's denial final for the purpose of judicial review. *See* [AR 1–3]; *see* 20 C.F.R. § 416.1481 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."). Ms. Poole timely appealed the ALJ/Commissioner's final decision to this Court. Compl., ECF No. 1.

## III. Hearing Testimony

The ALJ held a hearing regarding Ms. Poole's application on April 19, 2016. [AR 38–73]. Ms. Poole and a vocational expert testified at the hearing. [AR 39]. Ms. Poole stated that she stopped working in December 2013 because of her physical impairments. [AR 45–46]. She informed the ALJ that she could not maintain employment due to her difficulty concentrating, her inability to sit or stand for long periods of time, and her chronic fatigue. [AR 46].

Ms. Poole testified about her prior work experience. [*Id.*] She stated she has completed college and earned a post-graduate degree. [AR 44–45]. She held administrative positions at many different companies, including Aerotek, Pat's Paperworks, O'Toole & Sbarbaro, and OfficeMax. [AR 45–47]. Her daily work included bookkeeping, typing, copying, preparing files, and legal transcription. [*Id.*]

The ALJ next asked Ms. Poole about her current pain. [AR 48]. Ms. Poole stated she could sit for only one hour, stand for fifteen minutes, and walk for a few blocks. [*Id.*] She further testified that she has pain in her neck and lower lumbar every day. [*Id.*] She described the pain as a "dull ache like something's stabbing" and a numb, tingling in her left calf and hand. [AR 48–49]. Ms. Poole told the ALJ her left hand is numb 30 to 40% of the time, but she is

right-handed. [AR 49]. She explained she can lift ten pounds from a table but cannot pick up items from the floor, because she has shooting pain down her legs and back when she stands up. [AR 49–50]. Also, Ms. Poole stated she experiences migraines at least once a week and has difficulty concentrating. [AR 50].

Ms. Poole then told the ALJ about her daily activities. [AR 51]. She testified to lying down for four to five hours a day, reading or watching TV, and posting on Facebook. [AR 51–52]. She dusts, cleans the dishes, vacuums, and mops around the house, but she cannot bend to clean a toilet or shovel snow. [AR 52–53].

Next the ALJ asked Ms. Poole about her back pain. [AR 54]. She explained that she mainly sees Dr. Ksiazek, a doctor outside of Kaiser, because she was unhappy with the comments from her original spine doctor. [*Id.*] Ms. Poole testified to not leaving her house for seven or eight days because of the pain, and possibly giving up her home because it's too difficult to care for in her state. [AR 55–56].

The ALJ then questioned the vocational expert. [AR 56–60]. First, he asked the expert if an individual who could perform work at the light exertion level, but only stand and walk for two hours during the day, could hold any of Ms. Poole's past occupations. [AR 58]. The expert stated that an individual with these restrictions could be an administrative assistant, human resource assistant, legal transcriptionist, or bookkeeper, but not an office helper. [*Id.*] Next, he proposed a hypothetical in which an individual would need to lie down for four to five hours a day and could occasionally use only her non-dominant hand. [*Id.*] The vocational expert opined that as long as the resting period occurred outside of regular work hours, the person could still work. [*Id.*] However, the only job that survives a hand limitation would be the human resource

assistant. [*Id.*]

Subsequently, Ms. Poole questioned the vocational expert. [AR 59–72]. She asked if the vocational expert could testify to the percentage of jobs in America that would allow her to move around after an hour of sitting. [AR 64]. He explained that in her prior positions, taking a five-to-seven minute break every hour is not unusual. [*Id.*] She further questioned if someone with her pain level could hold those same positions; however, the ALJ did not allow him to answer medical-based questions. [AR 64–65]. At the end of the hearing, Ms. Poole submitted Dr. Ksiazek's Medical Source Statement. [AR 69]. Based on the limitations Dr. Ksiazek opined applied to Ms. Poole, the vocational expert testified she could work as an administrative assistant, legal transcriptionist and bookkeeper, but not an office helper. [AR 70].

The ALJ issued an unfavorable decision on June 28, 2016. [AR 28].

## **LEGAL STANDARDS**

### I. **SSA's Five-Step Process for Determining Disability**

Here, I will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step one determines whether the claimant is presently engaged in substantial gainful activity. If he is, he is not disabled. *See* 20 C.F.R. § 404.1520. Step two analyzes whether the

claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. *See id.* Step three analyzes whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment is listed or is equivalent to a listed impairment, he is presumed to be disabled. If the impairment does not satisfy step three, the ALJ must proceed to step four, which requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is capable of performing his previous work, either as he performed it or as it is generally performed in the national economy, he is not disabled. *See* 20 C.F.R. § 404.1520(e), (f); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("[C]laimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy."). However, if the claimant establishes a prima facie case of disability based on the previous four steps, the analysis proceeds to step five, in which the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

## II. Standard of Review

My review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *See Williamson v.*

*Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I may not re-weigh the evidence nor substitute my judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## **THE ALJ'S RULING**

The ALJ first ruled that Ms. Poole meets the insured status requirements of the Social Security Act through December 31, 2016. [AR 21]. Next, the ALJ determined that Ms. Poole has not engaged in substantial gainful employment since October 22, 2012—the alleged onset date. [*Id.*] At step two, the ALJ held that Ms. Poole has the following severe impairments: (1) degenerative disc disease of the lumbar spine, status post-surgery, degenerative disc disease of the cervical spine with disc bulging, (2) left hip osteoarthritis, status post total left hip arthroplasty, osteoarthritis, status post total left hip arthroplasty, osteoarthritis of the pelvis, (3) obesity, (4) hypothyroidism, (5) sinusitis, (6) hypertension, (7) migraines, (8) chronic pain

syndrome, (9) thoracic spine mild endplate spurring, early osteoarthritis, and disc protrusion. [AR 21].

Moving to step three, the ALJ found that Ms. Poole's impairments or combination of impairments do not medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 22–23]. The ALJ considered whether Ms. Poole's impairments meet Listings 1.02, 1.04, 4.00, 9.00(B)(2), and 11.00. [*Id.*] First, the ALJ held that Ms. Poole could ambulate effectively and did not demonstrate the pain, stiffness, or gross anatomical deformity necessary to meet Listing 1.02. [AR 22]. Next, the ALJ determined the medical evidence did not show nerve root compromise, spinal cord with nerve root compression, or the common five symptoms of degenerative disc disease under Listing 1.04. [*Id.*] Although hypertension does not have an individual listing, the ALJ evaluated this impairment under listing 4.00H, as it explains hypertension's effect on the body. [*Id.*] Ms. Poole did not meet this listing either, since it requires more severe symptoms of hypertension. [*Id.*] Next, the ALJ determined Ms. Poole's thyroid disorder did not meet Listing 9.00(B)(2), due to a lack of severe symptoms or complications. [AR 22–23]. Finally, the ALJ evaluated Ms. Poole's headaches under Listing 11.00, Neurological Impairments (headaches also do not have an individual listing), and he found Ms. Poole's headaches did not meet the necessary criteria again. [AR 23].

At step four, the ALJ held that, based on Ms. Poole's impairments, she has a RFC to perform light work. [AR 23]. The ALJ stated she could occasionally lift up to fifty pounds but only carry twenty; she would need a cane to ambulate; and she could sit for a total of seven hours but only forty-five minutes at a time, stand for a total of two hours but only twenty minutes at a time, and walk for a total of three hours but only forty minutes at a time. [*Id.*] Additionally, the

ALJ determined Ms. Poole could occasionally climb stairs, balance, and kneel, but never climb ladders or stoop. [*Id.*] The ALJ also limited Ms. Poole from working at unprotected heights or in extreme temperatures. [*Id.*] In making his determinations, the ALJ relied on Ms. Poole's objective medical evidence, her testimony at the hearing, and her daughter's opinion statement. [AR 24–26]. According to the ALJ, although Ms. Poole's impairments could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms are not consistent with the medical record. [AR 24].

The ALJ then discussed how the various medical opinions affect the RFC determination. [AR 26]. The ALJ gave great weight to Dr. Rears' February 2015 opinion, which stated that Ms. Poole could stand for only one to two hours per day. [*Id.*] Dr. Rears submitted her medical opinion again in March 2015, stating Ms. Poole was limited to light work for six months. [*Id.*] The ALJ gave this opinion some weight. [*Id.*] Next, the ALJ gave only some weight to Dr. Ksiazek's March 2016 opinion, since the claimant recently underwent total left hip arthroplasty. [*Id.*] The ALJ gave significant weight to Dr. Ksiazek's April 2016 opinion, since it was "consistent with her overall record after surgery." [AR 26–27].

Lastly, at step five, the ALJ found Ms. Poole is capable of performing the duties of her past relevant work as an administrative assistant. [AR 27]. The vocational expert testified that an individual with a similar RFC as Ms. Poole could perform the duties of an administrative assistant. [AR 28]. Therefore, the ALJ held that Ms. Poole has not been disabled from October 22, 2012 through the date of the decision. [*Id.*]

## ISSUES ON APPEAL

Ms. Poole alleges the following errors by the Commissioner: (1) failing to assess every severe impairment according to the listings; (2) finding that Ms. Poole's impairments do not equal or exceed the listing for disorders of the spine; (3) concluding that Ms. Poole can perform her past relevant work without fully developing the record; and (4) failing to properly account for all of Ms. Poole's limitations in calculating her RFC. Opening Br., ECF No. 17.

## ANALYSIS

**I.  At Step Three, the ALJ Erred in Failing to Assess Every Severe Impairment According to the Listings.**

Ms. Poole first contends the ALJ improperly failed to consider each of her severe impairments according to the listings. Opening Br. 4–6, ECF No. 17. Specifically, Ms. Poole argues the ALJ's lack of consideration for her chronic pain syndrome, sinusitis, and thoracic spine with mild endplate spurring constitutes an incomplete analysis of the medical evidence. *Id*. The Commissioner challenges this argument, stating there is no requirement to evaluate impairments for which an exact listing does not exist. Resp. Br. 8, ECF No. 16. Because the ALJ erred in this respect, remand is appropriate.

At step three, the ALJ must equate the claimant's severe impairment to one of a number of listed impairments. 20 C.F.R § 404.1520(d). These listed impairments describe various illnesses and injuries that prevent a claimant from engaging in any gainful activity. *Davidson v. Sec'y of Health and Human Servs*, 912 F.2d 1246, 1251–52 (10th Cir. 1990). It is not an exhaustive list, and the ALJ must compare any unlisted impairments with "closely analogous listed impairments." 20 C.F.R. § 404.1526(b)(2).

Thus, if the record indicates that the claimant exhibited signs of the impairments the ALJ found severe, the failure to consider the applicability of similar listings results in a legal error. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009); *see Murdock v. Astrue*, 458 F. App'x 702, 703 (10th Cir. 2012) (unpublished) (addressing only two out of three impairments and "failing to discuss the reasons why Ms. Murdock's knee condition does not meet Listing 1.02" resulted in an ALJ failure); *see also Simpson v. Colvin*, No. 2:15–CV–0225–EJF, 2016 WL 5349735, at *3 (D. Utah Sept. 23, 2016) (finding the ALJ's failure to discuss the majority of the medical evidence results in a legal error, because the record indicated Mr. Simpson's impairments could meet a listing). Indeed, without an explanation of the ALJ's consideration of similar listings, I "cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Here, Ms. Poole provided objective medical records that presented specific details in regard to her chronic pain syndrome, sinusitis, and thoracic spine with mild endplate spurring. [AR 453, 553, 559, 590, 608, 611, 622, 628, 712, 714, 749, 795, 798–99]. Moreover, the ALJ specifically found these impairments to be severe. [AR 21]. However, the ALJ failed to compare all her impairments to medically equivalent listings.[1] [AR 23]. Thus, the ALJ's determination that Ms. Poole does not have an impairment that meets a listing is a "bare

---

[1] Though Ms. Poole does not cite to any specific listings that she believes these severe impairments meet, the burden is on the ALJ to identify and discuss any relevant listings. *See Yandell v. Colvin,* No. CIV–14–1151–STE, 2016 WL 483142, at *2 (W.D. Okla. Feb. 5, 2016); *see also Lee v. Astrue*, No. 11–140J, 2012 WL 1355655, at *3 (W.D. Pa. Apr. 18, 2012) ("It is the ALJ's burden to identify the relevant listed impairment in the regulations that compares with the claimant's impairment."). Because the ALJ failed to even mention these three impairments he found severe and any possible equivalent listings, I cannot be certain that the ALJ analyzed

15

conclusion . . . beyond judicial review." Opening Br. 5; *see Clifton,* 79 F.3d at 1009. Similar to *Murdock*, in which the ALJ addressed only two of her three severe impairments, 458 F. App'x at 703, the ALJ in Ms. Poole's case analyzed only six of her nine severe impairments. [AR 22–23]. Therefore, just as the court held in *Murdock*, the failure to discuss all of Ms. Poole's severe impairments at step three results in a legal error. *Id.*

The Commissioner claims chronic pain syndrome, sinusitis, and thoracic spine with mild endplate spurring are not specified as individual impairments in the listings, therefore the ALJ did not need to discuss them at step three. Resp. Br. 8. This argument is flawed for two reasons. First, as discussed above, the ALJ is required to evaluate all of the claimant's severe impairments, and compare any unlisted impairment to the listings in his evaluation of the disability. 20 C.F.R § 404.1520(d); *see Parks v. Colvin*, No. 13–cv–01307–RBJ, 2015 WL 1064177, at *3 (D. Colo. Mar. 9, 2015) (reversing an ALJ's decision that the plaintiff was not disabled, because he failed to address her obesity, an impairment he found to be severe at step two); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (remanding the ALJ's decision for a failure to analyze whether the plaintiff's impairments are equivalent in severity to one of the listed impairments). Second, the ALJ addressed both hypertension and headaches, neither of which have a specific listing, yet he still found equivalent listings to evaluate their severity. [AR 22–23].

I must next consider whether the ALJ's failure to analyze the evidence was harmless error. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005). A legal error is harmless if, when following the correct analysis, no reasonable fact finder could determine a

---

whether these impairments met a listing.

16

different conclusion. *Id.* Remand is not necessary "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Id*. at 734. However, a district court's attempt to revise the ALJ's legal error "overstep[s] our institutional role and usurp[s] essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). Furthermore, the legal error is reversible if there is no other finding in the opinion that "conclusively negate[s] the possibility of any finding that Claimant is presumptively disabled under the pertinent listing." *Fischer-Ross*, 431 F.3d at 735; *see Lee v. Colvin*, No. CIV–12–0790–HE, 2013 WL 2449818 at *5 (W.D. Okla. June 5, 2013) (concluding an ALJ's failure to discuss the plaintiff's use of a cane constitutes reversible legal error, as there are no other findings in the ALJ's analysis "to conclusively negate a finding that Plaintiff is unable to ambulate effectively for purposes of meeting or medically equally Listing 1.02 or 1.03.")

If the ALJ's RFC findings in this case can "conclusively negate the possibility" Ms. Poole is not disabled at step three, then the omission of her chronic pain syndrome, sinusitis and thoracic spine with mild endplate spurring is considered a harmless error. *See Fischer-Ross*, 431 F.3d at 735. When analyzing her RFC, the ALJ considered Ms. Poole's complaints regarding her back, neck and hip pain, but he did not address her medical diagnosis of chronic pain syndrome or the effect this disease may have on her RFC. [AR 23–27]. Although the ALJ briefly mentioned Ms. Poole's sinusitis and an x-ray demonstrating her endplate spurring, he failed to address the effect these three impairments may have on her RFC. [*Id.*] Therefore, I cannot find that "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer-Ross*, 431 F.3d at 734; *See Lee*, 2013 WL 2449818,

17

at *5, ("Indeed, in the face of his silence, the Court cannot know whether the ALJ thoughtfully considered Plaintiff's use of a cane on his ability to work or whether he simply ignored the directives articulated in SSR 96–9p."); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) ("We cannot simply presume the ALJ applied the correct legal standards….").

Accordingly, I find remand is necessary for the Commissioner to determine whether chronic pain syndrome, sinusitis, and/or thoracic spine with mild endplate spurring are comparable to similar listings and to include those impairments in his analysis of the remaining steps in the sequential evaluation process.

## II. Remaining Issues

Ms. Poole also contends the ALJ ignored substantial evidence supporting a finding that her degenerative disc disease equals Listing 1.04, he erred in finding she could return to her past work, and he failed to properly account for all of Ms. Poole's severe impairments in calculating her RFC. Opening Br. 6–15, ECF No. 17. I "address only so much of Plaintiff's arguments as are sufficient to require reversal." *See Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014). I express no opinion as to Ms. Poole's remaining arguments, and neither party should take my silence as implied approval or disapproval of the arguments. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand."). I also do not suggest a result that should be reached on remand; rather, I encourage the parties, the ALJ, and the Commissioner on remand to consider fully and anew the evidence and all issues raised. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct

legal standards are invoked in reaching a decision based on the facts of the case.") (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

## CONCLUSION

In sum, at step three, the ALJ failed to consider every severe impairment according to the listings. This error is not harmless, because the ALJ did not consider all impairments at later steps in his analysis. Therefore, the ALJ's decision that Ms. Poole was not disabled since October 22, 2012, is **reversed and remanded** to the Commissioner for further consideration in accordance with this order.

Dated and entered at Denver, Colorado this 6th day of July, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge